In the Matter of JOSEPH W. HEIMSOTH, an Attorney, Respondent.

First Department, May 2, 1930.

*Einar Chrystie* of counsel [*Chase Mellen* with him on the brief], for the petitioner.

*Arthur T. O'Leary* of counsel, for the respondent.

DOWLING, P. J. Respondent was admitted to practice as an attorney and counselor at law in the State of New York at a term of the Appellate Division of the Supreme Court of the State of New York, First Department, on April 14, 1913.

The respondent is charged with misconduct as attorney at law in that (1) he deliberately permitted one of the justices of the New York Supreme Court to be deceived in the inquest in an undefended annulment action; and (2) on a motion for alimony in a separation action between the parties to the annulment action, with knowledge that the motion papers made no reference to the interlocutory judgment of annulment, respondent; with intent to deceive the court, deliberately refrained from taking any affirmative step to inform the court of the fact situation.

The record herein discloses that from 1922 to 1927 respondent shared offices and office expenses with another attorney, Francis B. Wood. They were not partners. Respondent had an arrangement with Wood whereby the latter would try any litigated matters the former might have and participate in the fees.

In September, 1923, respondent was retained by Charles Miller in connection with a case, involving some trouble between Miller

and his wife, pending in the Jefferson Market Magistrate's Court. Later Miller consulted respondent relative to bringing an action for an annulment of his marriage. At that time respondent told Miller that he would not like to pass judgment on the case without consulting his office associate, Mr. Wood. Miller came to the office, saw Wood, and a summons in an annulment action was served on Miller's wife on September 7, 1923, with respondent's name on it as plaintiff's attorney. Respondent's testimony is that he told Miller that Mr. Wood would have to take charge of the matter. Respondent further testified that as soon as he had given the matter in charge of Mr. Wood he did not follow the case except in a general way.

On September 19, 1923, a summons in a separation action, instituted by Miller's wife, was served upon Miller. Messrs. Gilbert & Black were the attorneys for Mrs. Miller. Presumably respondent appeared for the defendant in that action, as there is testimony concerning stipulations in his name extending the time of the plaintiff to serve her complaint.

No notice of appearance in behalf of the wife was served upon respondent in the annulment action brought by Miller. Miller inquired of Wood whether any answer had been received and upon being informed that none had been served he instructed Wood to proceed. Wood had the case put on the regular undefended matrimonial calendar for the November, 1923, term. The cause appeared on the day calendar of Special Term, Part III, of November 16, 1923, and was assigned to Special Term, Part V, Mr. Justice O'Malley presiding. Miller's testimony is that he went to court with Mr. Wood, respondent remaining in the office to wait for one of the witnesses in the case. When the witness came they went over to the court house and to the part to which it had been assigned, and then respondent busied himself, in and out of the court room, looking after witnesses. When the case finally settled down to trial respondent was sitting in the rear of the court room with two of the witnesses. The inquest was conducted by Mr. Wood. The following questions were put by Mr. Wood to the plaintiff, Miller, and answered by him as follows: " Q. Has any action been instituted by your wife against you for a divorce or for annulment? A. No, sir. Q. Or have you brought any action against her other than this one? A. No, sir, this is the only action." No reference was made by any one to the pending action for a separation. The court reserved decision, and on November 26, 1923, granted and signed the interlocutory judgment of annulment.

On the afternoon of November 16, 1923, the day on which the inquest in the annulment action had been taken, the complaint

in the separation action was served upon respondent, as attorney for the defendant Miller, together with motion papers for alimony and counsel fee in that action. At the same time there was served a complaint in an action for an accounting which Mrs. Miller had meanwhile instituted against her husband.

On November 27, 1923 (the day after the interlocutory decree of annulment had been signed), Miller swore to his affidavit in opposition to the application for alimony in the separation action. This affidavit, prepared by Wood, contained no reference to the interlocutory decree in the annulment action. Miller testified that he wanted Wood to put in the interlocutory decree to help cut down the alimony, but Wood said it would not help. Nothing was said to respondent about it.

In December, 1923, the answer to the complaint in the separation action was prepared. Miller's testimony is that he wanted to put in the interlocutory decree in the annulment action, but Wood said absolutely no, it was no bar in any way to the separation action. The following is an extract from Miller's testimony in reference to this: " I felt I was right and did not feel like giving in on it, and I told Mr. Wood I thought I would consult some one else, and he said, ' Let us go in and see what Mr. Heimsoth says.' He went in and saw Mr. Heimsoth. Mr. Wood went over it. Mr. Heimsoth told me, he said, ' Mr. Wood is more familiar with these matters than I am, and I think you better take his opinion,' and, in fact, he said, ' I myself feel that Mr. Wood is right.' So I let it go." This is admitted by respondent, who testified to his deferring to Mr. Wood on the proposition.

Final judgment in the annulment action was entered February 27, 1924. Subsequently that judgment and the interlocutory judgment were vacated because it was satisfactorily established that the defendant's default was due to an oversight of the clerical force in the office of Mrs. Miller's attorneys. Eventually Mrs. Miller obtained a decree in the separation action, after the annulment action had been decided in her favor; and the accounting action was discontinued without costs.

Mr. Wood died prior to the hearing in this proceeding before the official referee to whom this court referred the matter, following the service of respondent's answer to the petition.

It is argued that there was no misconduct at the inquest, because the two questions referred to were unnecessary; and further that there was no misconduct in connection with the affidavit in opposition to the alimony application, because the interlocutory annulment judgment was no defense in the separation suit. We are not now concerned with the materiality or relevancy of the

questions or a statement covering the interlocutory judgment. The questions and answers were calculated to deceive the court and the omission of any reference to the interlocutory judgment was designed to continue Mrs. Miller's inactivity in the annulment action.

It is clear that the true facts were concealed from the court at the time of the inquest in the husband's annulment action and at the time of the argument of the wife's motion for alimony and counsel fee in her separation action. It is also clear that this was done to obtain the final decree in the annulment suit without any interference on the part of the defendant therein.

The sole question here is the extent of respondent's participation in the deception practiced upon the court. The testimony satisfactorily establishes that Wood was in active charge of this litigation and that he alone conducted the inquest. The testimony of the stenographer in respondent's employ at the time is that Wood dictated the alimony affidavit and did everything in the case. Respondent's testimony is that he followed the case in a general way. He was present in court at the time the inquest was taken, although he was not at the counsel table. Further, he was consulted at the time the answer in the separation action was prepared.

The official referee, in his report, said: " A strict regard for professional duty would have required both Wood, the associate, and the respondent, the attorney of record, to have seen to it that the court was fully advised of the existing facts, to wit, that at the time of the annulment inquest there was another action for limited divorce or separation then pending between the parties, and at the time of the motion for alimony and counsel fee in the wife's separation suit, that an interlocutory decree of annulment had already been entered or was just about to be entered against the wife. Candor and fairness on the part of these attorneys would have required this. Certainly an alert sense of the necessity for dealing in a scrupulously honest manner with the court in stating the facts in the presentation of causes would have made such full and complete revelation imperative. * * * This was the duty the respondent as attorney of record owed to the court and he may not shift his responsibility or evade the duty by putting the onus of such failure on his associate."

An attorney of record who actually participates in all of the proceedings and who keeps generally in touch with the matters in which he is attorney of record, may not escape responsibility on the plea that the counsel he retained is to blame. In this matter respondent was guided and advised by his associate, Wood, who was actively in charge of the litigation and who was an older and

more experienced practitioner, and in the absence of direct proof that respondent had knowledge of the deception being practiced upon the court, we are reluctant to hold that he was a participant therein. The circumstances all tend to sustain his contention that he did not hear or know what questions were put and answers given at the inquest, nor were the questions framed after consultation with him. There is no doubt that Wood intended to, and did deceive the court on the inquest by concealing the fact that a separation action had been brought by the wife and on the application for alimony and in the answer in that separation action, by withholding any reference to the interlocutory judgment in the annulment action. Evidently Wood did not want the wife to know that the husband had obtained any interlocutory judgment in the annulment action, and in fact when later final judgment was entered therein, the wife had both judgments vacated, as her default had been unintentional and due to the oversight of a clerk in her attorney's office.

We think that respondent was censurable for having agreed to the omission of reference to the annulment action in the answer that Wood prepared to the complaint in the separation action. But in so doing respondent yielded to the advice of an older and more experienced practitioner to whom he had intrusted the conduct of the case and he himself does not appear to have had any improper motive or purpose in so yielding.

The respondent, therefore, should be censured.

McAVOY, MARTIN, O'MALLEY and SHERMAN, JJ., concur.

Respondent censured.